**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 13 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA )
and )
STATE OF ARKANSAS, )
)
      Plaintiffs, )
)
      v. )
)
EXXONMOBIL PIPELINE COMPANY )
and )
MOBIL PIPE LINE COMPANY, )
)
      Defendants. )
)

Civil Action No. 4:13cv0355-Jmm

Judge

This case assigned to District Judge *Mosely*
and to Magistrate Judge *Kearney*

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), and the State of Arkansas, acting on

behalf of the Arkansas Department of Environmental Quality ("ADEQ") by the authority of the

Arkansas Attorney General and through the undersigned attorneys, file this Complaint and allege

as follows:

### NATURE OF THE ACTION

1.      This is a civil action against ExxonMobil Pipeline Company and Mobil Pipe Line

Company ("Defendants") related to Defendants' unlawful discharge of heavy crude oil from a

20-inch-diameter interstate pipeline – the Pegasus Pipeline – that ruptured in Mayflower,

Faulkner County, Arkansas, on March 29, 2013.  The oil spilled directly into a residential

1

neighborhood and then into nearby waterways, including an unnamed creek, wetlands, and Lake Conway.  Residents were forced to evacuate their homes due to the hazardous conditions in the neighborhood resulting from the spill.  Defendants' oil has contaminated land and waterways and impacted human health and welfare, wildlife, and habitat.  Cleanup efforts are still ongoing.

2.      The United States seeks civil penalties and injunctive relief pursuant to the Clean Water Act ("CWA").  The United States brings the following two causes of action:

> (i)     Claim for civil penalties under CWA Section 311(b)(7)(A) and (D), 33 U.S.C. § 1321(b)(7)(A) and (D), for the oil spill; and
>
> (ii)    Claim for Injunctive relief under CWA Section 309(b), 33 U.S.C. § 1319(b).

3.      The State of Arkansas seeks civil penalties and recovery of response costs and damages pursuant to the Arkansas Water and Air Pollution Control Act, the Arkansas Hazardous Waste Management Act, OPA, and the Declaratory Judgment Act.  The State of Arkansas brings the following four causes of action:

> (i)     Claim for civil penalties under the Arkansas Hazardous Waste Management Act, ARK. CODE ANN. § 8-7-201 *et seq.*, for improper storage of hazardous waste generated during the cleanup activities;
>
> (ii)    Claim for civil penalties under the Arkansas Water and Air Pollution Control Act, ARK. CODE ANN. § 8-4-101 *et seq.*, for water pollution violations;
>
> (iii)   Claim for civil penalties under the Arkansas Water and Air Pollution Control Act, ARK. CODE ANN. § 8-4-101 *et seq.*, for air pollution

> violations; and
>
> (iv)    Claim for declaratory judgment pursuant to the Oil Pollution Act
> ("OPA"), 33 U.S.C. § 2717(f)(2), and the Declaratory Judgment Act, 28
> U.S.C. § 2201(a), declaring that Defendants are responsible and strictly
> liable for State removal costs and damages under OPA.

## JURISDICTION, AUTHORITY, AND VENUE

4.    This Court has jurisdiction over this matter pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n); 33 U.S.C. § 2717(b) (OPA); and 28 U.S.C. §§ 1331, 1345, 1355. This Court has jurisdiction over the subject matter of the State's claims in this action pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

5.    Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by, *inter alia*, Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519. Authority to bring this action on behalf of the State of Arkansas is vested in ADEQ pursuant to ARK. CODE ANN. §§ 8-4-103(b) and 8-7-204(b) and the Office of the Attorney General pursuant to ARK. CODE ANN. § 26-16-702(e).

6.    Venue is proper in the Eastern District of Arkansas under Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); 33 U.S.C. § 2717(b) (OPA); and 28 U.S.C. §§ 1391 and 1395 because the claim arose in this district and Defendants are located and doing business in this district.

## THE PARTIES

7.    Plaintiff United States of America is acting at the request of EPA. EPA is serving

as the lead federal agency in the oversight of the oil spill cleanup efforts in Mayflower, Arkansas, and has authority to enforce the provisions of the Clean Water Act.

8.      Plaintiff State of Arkansas is acting at the request of ADEQ.  ADEQ is serving as the lead state agency in the oil spill clean-up efforts in Mayflower, Arkansas.  The State has both statutory and common law authority to enforce the State's environmental laws in order to preserve, protect, and conserve Arkansas' environment.  Plaintiff State of Arkansas further has the authority to uphold the provisions of those environmental programs delegated to the State by the EPA.

9.      Defendant ExxonMobil Pipeline Company is the operator of the Pegasus Pipeline. Defendant is a Delaware corporation with its headquarters in Houston, Texas.

10.     Defendant Mobil Pipe Line Company is the owner of the Pegasus Pipeline. Defendant is a Delaware corporation with its headquarters in Houston, Texas.

## FACTS

11.     The Pegasus Pipeline is owned by Mobil Pipe Line Company and operated by ExxonMobil Pipeline Company.

12.     The Pegasus Pipeline is a 20-inch-diameter crude oil pipeline that runs approximately 850 miles from Patoka, Illinois, to Nederland, Texas.  The Pegasus Pipeline is used to transport Canadian heavy crude oil.  The pipeline originally was constructed in the 1940s.

13.     On March 29, 2013, a segment of the Pegasus Pipeline ruptured in a residential neighborhood in the town of Mayflower, Arkansas.  The pipe was buried approximately two feet below the ground surface at that location.

14.    The oil spilled directly into a residential neighborhood and then flowed into nearby waterways, including an unnamed creek, wetlands, and Lake Conway. The waters of Lake Conway flow into the Arkansas River.

15.    People in 22 homes in the neighborhood were evacuated due to the hazardous conditions caused by the oil spill.

16.    Most, if not all, the residents who were evacuated on March 29, 2013, following the oil spill are still out of their homes as of the filing of this Complaint.

17.    The spilled oil contaminated homes, land, and waterways and impacted people, wildlife, and habitat. The spilled oil also caused, *inter alia*, a film or sheen upon or discoloration of the surface of the water and adjoining shorelines and caused deposition beneath the surface of the water or upon adjoining shorelines.

18.    Defendants have stored petroleum-contaminated waste at 322 Highway 36, Conway, Arkansas ("Highway 36 site").

19.    The Highway 36 site waste consists of soils, oily debris, wood chips, hydrovac mud, concrete and asphalt, and oil/water mixture wastes.

20.    ADEQ notified Defendants on May 1, 2013, that the Highway 36 site waste removal was to be completed within seven (7) days of the letter in accordance with the Waste Disposal Plan dated April 5, 2013 (amended April 25, 2013).

21.    Defendants failed to have the waste removed from the Highway 36 site by May 8, 2013, and the waste is still present on the site.

22.    The release of petroleum products caused and continues to cause pollution to waters of the State.

5

23.     The petroleum that is still present in portions of the impacted area continues to negatively impact existing instream water uses and does not meet the level of water quality necessary to protect the existing uses.

24.     The petroleum release has increased the true color of waters of the State through either the presence of petroleum or sediment to the extent that it has interfered with present or projected future uses of these waters of the State.

25.     The odor produced by the petroleum resulted in offensive odors arising from waters of the State and interfered with the reasonable use of the water.

26.     The petroleum release introduced toxic substances into waters of the State at levels above acceptable human health and aquatic life criteria.

27.     The presence of petrochemical substances in waters of the State has produced globules, residue, film and/or sheen on the surface or banks.

28.     Due to the release of petroleum and the resulting clean-up, there has been a visible increase in the turbidity of waters of the State.

29.     The petroleum that was released impacted the pH of waters of the State and caused it to fluctuate in excess of 1.0 unit over a 24-hour period.

30.     The petroleum in the waters of the State caused dissolved oxygen levels to decrease to below the set standards that must be met to protect the aquatic life.

31.     The air pollution caused by the release of petroleum has unreasonably interfered with the Mayflower residents' enjoyment of life and use of their property and the surrounding area.

32.     The discharged oil is the source of the air contamination that caused the

evacuation of homes in the residential neighborhood.

33.    Defendants did not promptly repair damages to the Pegasus Pipeline.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Civil Penalties for Violations of CWA Section 311(b) – Oil Discharge
### 33 U.S.C. § 1321(b)

34.    Paragraphs 1 through 17 are realleged and incorporated herein.

35.    Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the "discharge of oil or any hazardous substances (i) into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . in such quantities as may be harmful . . . ."

36.    Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ."

37.    Civil penalties can be increased pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), if the violation results from "gross negligence or willful misconduct."

38.    Enforcement of these provisions supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1321(b)(1), 1251(a).

39.    Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

40.    ExxonMobil Pipeline Company is the "operator" of an onshore facility from

which oil was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C.
§ 1321(a)(6).

41.     Mobil Pipe Line Company is the "owner" of an onshore facility from which oil
was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

42.     Defendants' Pegasus Pipeline is an "onshore facility" within the meaning of
Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

43.     The spilling of oil from the Pegasus Pipeline in Mayflower, Arkansas constituted
a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C.
§ 1321(a)(2).

44.     The discharge was of "oil" within the meaning of Section 311(a)(1) of the CWA,
33 U.S.C. § 1321(a)(1).

45.     The discharge of oil was into or upon waters of the United States within the
meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

46.     The discharge was in a quantity "as may be harmful" within the meaning of
Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3.

47.     Defendants' discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C.
§ 1321(b)(3).

48.     Defendants are liable for civil penalties of up to $1,100 per barrel discharged
under CWA Section 311(b)(7)(A), or, if it is proved that the violations are the result of gross
negligence or willful misconduct, not more than $4,300 per barrel discharged under Section
311(b)(7)(D). *See* 40 C.F.R. § 19.4 (establishing, effective after January 12, 2009, that the per-
barrel civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty

Inflation Adjustment Rule).

## SECOND CAUSE OF ACTION

### Injunctive Relief under CWA Section 309(b)
### 33 U.S.C. § 1319(b)

49.     Paragraphs 1 through 17 and 34 through 48 are realleged and incorporated herein.

50.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with enumerated sections.  The discharge of oil described above violated Section 301(a) of the CWA.

51.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), is the enforcement provision for Section 301(a) and authorizes civil actions for "appropriate relief, including a permanent or temporary injunction."

52.     Defendants are liable for injunctive relief pursuant to Section 309(b) of the CWA.

## THIRD CAUSE OF ACTION

### Violations of the Arkansas Hazardous Waste Management Act of 1979

53.     The preceding paragraphs are realleged and incorporated herein.

54.     ARK. CODE ANN. §§ 8-7-201, *et seq.*, otherwise known as the Arkansas Hazardous Waste Management Act ("HWMA") of 1979, and Arkansas Pollution Control and Ecology Commission ("APC&EC") Regulation 23 set forth the State regulatory program governing the generation, storage, transportation, treatment, and disposal of hazardous wastes.

55.     Under ARK. CODE ANN. § 8-7-205(4), it shall be unlawful for any person to store, collect, transport, treat, or dispose of any hazardous waste contrary to the rules, regulations, permits, or orders issued under the HWMA or in such a manner or place as to create or is likely to create a public nuisance or a public health hazard or to cause or is likely to cause water or air

pollution within the meaning of the Arkansas Water and Air Pollution Control Act, ARK. CODE ANN. §§ 8-4-101, *et seq.*

56.     APC&EC Regulation 23.270.1 requires that those that treat, store, and dispose of hazardous wastes have a permit issued by the ADEQ during the active life of the treatment, storage, and disposal facility.

57.     A "person" is defined as any individual, corporation, company, firm, partnership, association, trust, joint-stock company, state agency, government instrumentality or agency, institution, county, city, town, or municipal authority or trust, venture, or any other legal entity, however organized. ARK. CODE ANN. § 8-7-203(10).

58.     "Storage" means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of hazardous wastes. ARK. CODE ANN. § 8-7-203(12)(A).

59.     "Transportation," as defined by the HWMA, occurs upon the movement of wastes from the point of generation to any intermediate points and finally to the point of ultimate storage or disposal. ARK. CODE ANN. § 8-7-203(13).

60.     The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water in whatever manner so that such hazardous waste or any constituent thereof might or might not enter the environment or be emitted into the air or discharged into any waters including groundwaters. ARK. CODE ANN. § 8-7-203(4).

61.     Under the HWMA, the term "hazardous waste" means any waste or combination of wastes of a solid, liquid, contained gaseous, or semisolid form, which, because of its quantity,

10

concentration, or physical, chemical, or infectious characteristics, may in the judgment of

ADEQ: (1) cause or significantly contribute to an increase in mortality or an increase in serious

irreversible or incapacitating reversible illness, or (2) pose a substantial present or potential

hazard to human health or the environment when improperly treated, stored, transported, or

disposed of, or otherwise improperly managed.  Such wastes include, but are not limited to, those

which are radioactive, toxic, corrosive, flammable, irritants, or strong sensitizers or those which

generate pressure through decomposition, heat, or other means.  ARK. CODE ANN. § 8-7-203(7).

62.     The term hazardous waste includes petroleum-contaminated wastes.

63.     Defendants are "persons" who have "stored," "transported" and "disposed" of

"hazardous wastes" contrary to the rules, regulations, permits, or orders issued under the HWMA

or in such a manner or place as to create or as is likely to be created a public nuisance or a public

health hazard or to cause or is likely to cause waste or air pollution within the meaning of the

Arkansas Water and Air Pollution Control Act.

64.     Under ARK. CODE ANN. § 8-7-204(b)(4) any person who violates any provision

of the Arkansas HWMA and APC&EC Regulation 23 may be assessed a civil penalty of up to

$25,000.00 per day, per violation.

## FOURTH CAUSE OF ACTION

### Violations of the Arkansas Water and Air Pollution Control Act – Water

65.     The preceding paragraphs are realleged and incorporated herein.

66.     ARK. CODE ANN. §§ 8-4-101, *et seq.*, otherwise known as the Arkansas Water

and Air Pollution Control Act, and APC&EC Regulation 2 create a comprehensive program for

the protection of water quality.

11

67.    ARK. CODE ANN. § 8-4-217(a)(1) makes it unlawful to cause pollution of any waters of the State.

68.    The term "pollution" is defined as the contamination or other alteration of the physical, chemical, or biological properties of any waters of the State, or such discharge of any liquid, gaseous, or solid substances in any waters of the State as will, or is likely to, render the waters harmful, detrimental, or injurious to public health, safety, or welfare; to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses; or to livestock, wild animals, birds, fish, or other aquatic life.  ARK. CODE ANN. § 8-4-102(6).

69.    APC&EC Regulation 2.201 requires that existing instream water uses and the level of water quality necessary to protect the existing uses shall be maintained and protected.

70.    Pursuant to APC&EC Regulation 2.406, true color shall not be increased in any waters to the extent that it will interfere with present or projected future uses of these waters.

71.    Under APC&EC Regulation 2.407, taste and odor-producing substances shall be limited to receiving waters to concentrations that will not interfere with the production of potable water by reasonable water treatment processes; impart unpalatable flavor to food or fish; result in offensive odors arising from the waters; or otherwise interfere with the reasonable use of the water.

72.    APC&EC Regulation 2.409 provides that discharges shall not be allowed into any waterbody which, after consideration of the zone of initial dilution, the mixing zone, and critical flow conditions, will cause toxicity to human, animal, plant, or aquatic life or interfere with normal propagation, growth, and survival of aquatic biota.

12

73.    Pursuant to APC&EC Regulation 2.410, oil, grease, or petrochemical substances shall not be present in receiving waters to the extent that they produce globules; other residue; any visible, colored film on the surface; coat the banks or bottoms of the waterbody; or adversely affect any of the associated biota.

74.    Under APC&EC Regulation 2.503, there shall be no distinctly visible increase in turbidity of receiving waters attributable to municipal, industrial, agricultural, other waste discharges, or instream activities.

75.    APC&EC Regulation 2.504 provides that as a result of waste discharges, the pH of water in streams or lakes must not fluctuate in excess of 1.0 unit over a period of 24 hours and pH values shall not be below 6.0 or above 9.0.

76.    APC&EC Regulation 2.505, provides that dissolved oxygen in lakes and reservoirs shall not exceed 5 mg/l, unless otherwise permitted by the APC&EC.

77.    Under APC&EC Regulation 2.508, toxic substances shall not be present in receiving waters, after mixing, in such quantities as to be toxic to human, animal, plant, or aquatic life or to interfere with the normal propagation, growth, and survival or the indigenous aquatic biota.

78.    Pursuant to APC&EC Regulation 2.510, oil, grease, or petrochemical substances shall not be present in receiving waters to the extent they produce globules or other residue; any visible, colored film on the surface; coat the banks or bottoms of watercourses; or adversely affect any of the associated biota.  As a guideline, oil and grease shall not exceed 10 mg/l average or 15 mg/l maximum when discharging to surface waters.

13

79.     Defendants have caused "pollution" of the waters of the State in the manners outlined herein.

80.     Under ARK. CODE ANN. § 8-4-103(b)(4), any person who violates any provision of the Arkansas Water and Air Pollution Control Act and APC&EC Regulation 2 may be assessed a civil penalty of up to $10,000.00 per day, per violation.

### FIFTH CAUSE OF ACTION

### Violations of the Arkansas Water and Air Pollution Control Act – Air

81.     The preceding paragraphs are realleged and incorporated herein.

82.     ARK. CODE ANN. §§ 8-4-101, *et seq.*, otherwise known as the Arkansas Water and Air Pollution Control Act, and APC&EC Regulation 18 are intended to safeguard the air resources of the State by controlling or abating air pollution.

83.     ARK. CODE ANN. § 8-4-310(a)(3) makes it unlawful to violate any rule, regulation, or order of the Arkansas Pollution Control and Ecology Commission issued pursuant to the Arkansas Water and Air Pollution Control Act.

84.     Under APC&EC Regulation 18.801, no person shall cause or permit the emission of air contaminants, including odors or water vapor and including an air contaminant whose emission is not otherwise prohibited, if the emission of the air contaminant constitutes air pollution.

85.     Under both the Arkansas Water and Air Pollution Control Act and APC&EC Regulation 18, the term "air pollution" is defined as the presence in the outdoor atmosphere of one or more air contaminants in quantities, or characteristics, and of a duration which are materially injurious or can be reasonably expected to become materially injurious to human,

plant, or animal life or to property, or which unreasonably interfere with the enjoyment of life or

use of property throughout the state or throughout the area of the state as shall be affected

thereby. ARK. CODE ANN. § 8-4-303(5); Regulation 18, Section 2. The term "air contaminant"

is meant to include any solid, liquid, gas, or vapor, or any combination thereof. ARK. CODE

ANN. § 8-4-303(2); APC&EC Regulation 18, Section 2.

86.     A "person" is any individual, partnership, firm, company, public or private

corporation, association, joint-stock company, trust, estate, political subdivision, or any agency,

board, department, or bureau of the state, or any other legal entity whatever which is recognized

by law as the subject of rights and duties. ARK. CODE ANN. § 8-4-303(10).

87.     Defendants are "persons" who have caused or permitted the emission of "air

contaminants," thereby causing "air pollution", as those terms are defined herein.

88.     Under ARK. CODE ANN. § 8-4-103(b)(4), any person who violates any

provision of the Arkansas Water and Air Pollution Control Act and APC&EC Regulation 18

may be assessed a civil penalty of up to $10,000.00 per day, per violation.

## SIXTH CAUSE OF ACTION

### Declaratory Judgment under OPA and Declaratory Judgment Act
### 33 U.S.C. § 2717(f)(2), 28 U.S.C. § 2201(a)

89.     The preceding paragraphs are realleged and incorporated herein.

90.     OPA provides that "each responsible party for a vessel or facility from which oil

is discharged . . . is liable for the removal costs and damages . . . that result from such incident."

33 U.S.C. § 2702(a).

91.     "Removal costs" under OPA include "all removal costs incurred by the United

States [or] a State." 33 U.S.C. § 2702(b)(1)(A).

15

92.     "Damages" under OPA include "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee [or] a State trustee." 33 U.S.C. § 2702(b)(2)(A).

93.     "Damages" under OPA also include damages for "real or personal property," "subsistence use," "revenues," "profits and earning capacity," and "public services." 33 U.S.C. § 2702(b)(2)(B)-(F).

94.     Pursuant to OPA, "the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages." 33 U.S.C. § 2717(f)(2).

95.     Each Defendant is a "responsible party" within the meaning of OPA, 33 U.S.C. § 2701(32)(B). ExxonMobil Pipeline Company is the operator of the Pegasus Pipeline, and Mobil Pipe Line Company is the owner of the pipeline.

96.     The Pegasus Pipeline is a "facility" from which oil was "discharged" within the meaning of OPA, 33 U.S.C. § 2701(9), (7).

97.     The State of Arkansas has incurred removal costs and has sustained damages as defined by OPA. The oil removal efforts are ongoing, and the final amount of removal costs and the full extent of damages under OPA are not yet known.

98.     The State of Arkansas seeks a declaratory judgment pursuant to OPA, 33 U.S.C. § 2717(f)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that Defendants are responsible and strictly liable for the State's removal costs and damages under OPA.

16

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, United States of America and State of Arkansas, respectfully request that this Court:

A.      Enter a judgment that Defendants are liable to the United States for civil penalties pursuant to Section 311(b) of the Clean Water Act and assess civil penalties of up to $1,100 per barrel discharged pursuant to Section 311(b)(7)(A), or if the violation is the result of gross negligence or willful misconduct, no more than $4,300 per barrel discharged pursuant to Section 311(b)(7)(D);

B.      Enter a judgment that Defendants are liable to the United States for all appropriate injunctive relief pursuant to Sections 301(a) and 309(b) of the Clean Water Act and award injunctive relief against each Defendant as appropriate;

C.      Enter a judgment that Defendants are liable to the State of Arkansas for civil penalties pursuant to the Arkansas Hazardous Waste Management Act and assess civil penalties of up to $25,000 per day, per violation;

D.      Enter a judgment that Defendants are liable to the State of Arkansas for civil penalties for water pollution violations pursuant to the Arkansas Water and Air Pollution Control Act and assess civil penalties of up to $10,000 per day, per violation;

E.      Enter a judgment that Defendants are liable to the State of Arkansas for civil penalties for air pollution violations pursuant to the Arkansas Water and Air Pollution Control Act and assess civil penalties of up to $10,000 per day, per violation;

F.      Enter a declaratory judgment that Defendants are responsible and strictly liable for State removal costs and damages under the Oil Pollution Act; and

G.     Grant the United States and the State of Arkansas such other relief as the Court

deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:


ROBERT G. DREHER
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division



JASON T. BARBEAU
Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov



CHRISTOPHER R. THYER
United States Attorney
Eastern District of Arkansas


RICHARD M. PENCE, JR.
Assistant United States Attorney (Ark. Bar #69059)
United States Attorney's Office

18

Eastern District of Arkansas
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600 (telephone)
richard.pence@usdoj.gov

Of Counsel:

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

FOR THE STATE OF ARKANSAS:

DUSTIN MCDANIEL
Arkansas Attorney General
Arkansas Attorney General's Office
323 Center Street
Little Rock, AR 72201

KENDRA AKIN JONES
Assistant Attorney General
CURAD/Environmental Division
Arkansas Attorney General's Office
323 Center Street, Suite 400
Little Rock, AR 72201
(501) 682-7383 (telephone)
(501) 682-3895 (facsimile)
kendra.jones@arkansasag.gov

20