**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES OF AMERICA and
STATE OF ARKANSAS,**                                                    **PLAINTIFFS**

**v.**                                    **Case No. 4:13-cv-00355 KGB**

**EXXONMOBIL PIPELINE COMPANY and
MOBIL PIPE LINE COMPANY,**                                              **DEFENDANTS**

<u>**ORDER**</u>

Before the Court are plaintiff United States of America's motion to compel defendants to

produce discovery responses (Dkt. No. 38), to which defendants have responded in opposition

(Dkt. No. 53), and to which the United States has filed an unopposed motion for leave to file

reply brief (Dkt. No. 54), and reply (Dkt. No. 55); the United States' motion to expedite review

of the United States' motion to compel (Dkt. No. 39), to which defendants have responded in

opposition (Dkt. No. 50); the United States' motion for Order to refer United States' motion to

compel to the Magistrate for expedited review (Dkt. No. 40), to which defendants have

responded in opposition (Dkt. No. 52); and the State of Arkansas's motion for joinder with the

United States' motion to compel (Dkt. No. 51).

For good cause shown, the United States' unopposed motion for leave to file reply brief

is granted (Dkt. No. 54).  The State of Arkansas's motion for joinder is granted (Dkt. No. 51).

The United States' motion to compel is granted in part and denied in part (Dkt. No. 53).  The

United States' motion to expedite review and motion for Order referring the motion to compel to

the Magistrate are denied (Dkt. Nos. 39, 40).

The United States seeks an Order compelling defendants to (1) produce overdue

responsive documents, (2) produce overdue responsive documents and interrogatory responses

with respect to the entire length of the Pegasus Pipeline, (3) produce overdue responsive documents and interrogatory responses for specified discovery requests with respect to the time period of 1988 through the present, and (4) produce overdue responsive documents and an interrogatory response in connection with defendants' current best estimate of the volume of oil spilled during the incident.

## I.      Production of Overdue Responsive Documents

The United States first seeks the production of overdue responsive documents, stating that discovery requests were served in November 2013, that a one-month extension to respond expired January 24, 2014, and that no further motion for extension has been filed.  The United States argues that, under defendants' proposed production schedule, it will take defendants four to seven additional months to complete their document production for the first set of document requests—a proposal that will push document production until the fact discovery period is almost closed or closed.  The State of Arkansas seeks to join the United States' motion on this point, and the Court grants the State of Arkansas's request (Dkt. No. 51).

Defendants respond that the incident at issue has given rise to 16 suits filed in state and federal courts and that, given the overlapping nature of the issues in all the cases, defendants must integrate and unify their efforts to respond to the multiplicity of discovery requests in all cases to limit the burden on them and to assure consistency and access to the same underlying information.  *See Hagwood v. General Elec. Co.*, 2007 WL 4287655 *2 (S.D. Oh. Dec. 4, 2007) (granting partial stay to avoid duplicative discovery proceedings or inconsistent pretrial rulings); 28 U.S.C. § 1407 (authorizing coordinated or consolidated pretrial proceedings when civil actions involve common questions of fact in different districts).  The Court notes that defendants seek no relief under the cases or statute cited based on the multiple suits pending, and the Court questions whether such relief, even if sought, would be appropriate here.  As plaintiffs argue,

2

only four cases are filed in federal court in connection with the oil spill, and those are all pending within this district.  The remaining cases are pending in state court.  Further, this is the only case in which plaintiffs the United States and the State of Arkansas have filed suit.  Plaintiffs' claims in this lawsuit differ from those asserted by private party plaintiffs in the other actions pending.

With that, the Court acknowledges the discovery burden on defendants presented by 16 separate suits.  Defendants state that they have received 165 discovery requests in this case and a total of 392 requests in all the related cases.  Further, they state that at least 83 custodians had approximately 2.7 million electronic documents; that even more custodians had possession of over 63,000 paper documents which must be screened using search terms; and that approximately 630,000–800,000 documents must be reviewed for responsiveness, confidentiality, and privilege.  Defendants state that they have prioritized document collection in favor of material that is likely to be most relevant to plaintiffs' requests and so far have produced 53,253 documents consisting of over 191,994 pages.

Defendants also contend that part of the delay in producing responsive documents is attributable to the State of Arkansas's failure to agree to a routine protective order governing the production of business confidential information.  However, defendants state that "[t]he issue in the present case was recently resolved by the Court's entry of the proposed protective order on March 5, 2014." (Dkt. No. 50, at 3).  Defendants note that litigation in this case commenced relatively soon after the incident when emergency response was ongoing and documents were still being generated.

Defendants represent to the Court that they suggested using a predictive coding method which would ease their burden but that, as of the time of these filings, the United States had not agreed to this method of review.  There is no indication in the parties' submissions that they seek

the Court to resolve disputes as to the method of review to be utilized in this case.  Defendants

estimate that, proceeding under the current review method and even with 50 lawyers devoted to

the full-time task of review, the production process could not be completed until the end of June

2014.  Defendants maintain that, at best, review and production might be completed at the end of

August 2014.  The United States disagrees and claims that defendants' estimate seems unlikely,

as it would have each attorney reviewing about 250 documents per day which the United States

believes is a significantly lower number of documents than an attorney could review in a day.

The United States further argues that defendants benefit from an economy of scale in that they

must review and produce documents for 16 cases, thus the number of reviewers per case in

reality should be counted as closer to three attorneys per case rather than the 50 attorneys

defendants claim.

The United States notes that the Agreed Scheduling Order was entered by the Court on

October 1, 2013, and that defendants did not did not raise any concerns about the length of the

fact discovery period (Dkt. No. 30).  Defendants suggest in their response that the parties be

directed to meet and confer to determine if they should propose to extend that schedule in light

of the overarching document production schedule.  The United States further notes that plaintiffs

produced over 90,000 documents in their initial, on-time production on February 7, 2014.

The Court understands that defendants have a large amount of discovery to produce.

However, providing defendants an unduly long period of time to complete that discovery raises

the possibility of prejudice to plaintiffs.  Time has passed since this motion was filed.  It is

unclear to the Court whether the parties will reach compromise on the document review method

to be employed and whether the Court's rulings on the remaining discovery disputes raised in

this motion will significantly impact the scope of work to be done to complete fact discovery and

document production.  The Court directs that defendants complete their review and production of documents by July 10, 2014, unless good cause is shown in advance for extending the period.

## II.        Production of Documents Responsive to the Entire Length of the Pipeline

The United States next moves to have defendants produce documents and information concerning the entire length of the Pegasus Pipeline, the pipeline at issue in this case. Defendants respond that the approximately 650-mile northern section and approximately 200-mile southern section of the Pegasus Pipeline were operated as different pipelines until connected in 2006.  They maintain that the southern section was constructed of different materials than the northern section; was constructed at a different time; and has a different manufacturing, service, and maintenance history.  Further, defendants state that the incident took place in the northern section and contend that the southern section is not relevant.  Defendants also claim that, in fact, none of the southern section is within the State of Arkansas.

The United States argues that it is suing defendants under the Clean Water Act, under which a Court's penalty determination requires consideration of eight penalty factors:

> the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require.

33 U.S.C. § 1321(b)(8).  The United States argues, among other things, that information about past violations in connection with the entire pipeline is directly relevant to the penalty factor that considers a defendant's "history of prior violations."  *See* 33 U.S.C. § 1321(b)(8).  Defendants have not responded to this point, which the Court finds relevant.

Defendants are ordered to produce documents relevant to the United States' motion to compel with respect to the entire length of the Pegasus Pipeline, with the understanding that, as

separate defendant ExxonMobil Pipeline Company explained, "[t]he Pegasus Pipeline was originally constructed and operated as three separate pipeline systems." (Dkt. No. 38-2, at 66–68). Based on this, the Court considers the entire length of the Pegasus Pipeline to be all three separate pipeline systems taken together.

### III.    Production of Documents From 1988 to Present

Third, the United States in certain of their discovery requests seeks information and documents dating from 1988 to the present. However, defendants have responded to interrogatories and requests for production with information from 2000 to the present, even if the discovery requests seek information or documents for a longer period. Defendants argue, among other things, that a year 2000 discovery cutoff is logical because separate defendant ExxonMobil Pipeline Company did not operate the pipeline prior to the Exxon/Mobil merger which concluded in late 1999.

The United States responds to this argument by noting that, despite what defendants now claim should be discoverable under Federal Rule of Civil Procedure 26, defendants sought and obtained discovery dating back to the 1950s from the United States and to 1990 from the State of Arkansas. The United States observes that Exxon is a 125-year old company, argues that a reasonable limit to history for discovery purposes is 25 years, and contends that, since defendants have requested information dating back 23 years or more, they have no basis to argue against the reasonableness of the 25-year time period.

The United States also argues that documents relating to the merger could predate the 1999 conclusion of that merger and could well include analyses about known and potential risks and liabilities in connection with the Pegasus Pipeline or long-term financial projections and cost-benefit calculations, including whether and how capacity of the pipeline might be increased

and any safety risks in connection thereto.  The United States maintains that this information would be relevant to assessing the "economic benefit" and "degree of culpability" penalty factors.  *See* 33 U.S.C. § 1321(b)(8).

The Court finds that a 25 year limit is reasonable under the circumstances presented here and that the merger of Exxon/Mobil does not make any discovery before the merger irrelevant, given the Court's limited understanding of the Pegasus Pipeline's history (Dkt. No. 38-2, at 66–68).  Therefore, the Court orders defendants to comply with plaintiffs' certain discovery requests with respect to the entire time period of 1988 through the present.  *See Hawthorne Land Co. v. Occidental Chem. Corp.*, 2002 WL 1976931, at *4 (E.D. La. Aug. 23, 2002) (rejecting defendants' effort to limit discovery to an eight-year time period in a case concerning property damage caused by leaks from a pipeline and granting motion to compel discovery as to pipeline at issue "from its construction to present").

**IV.     Production of Documents Related to Defendants' Best Estimate of Oil Spilled**

Finally, the United States requests in discovery information and documents relating to defendants' current estimates of the volume of oil that spilled as a result of the incident.  At the time of filing their response to this motion, defendants responded that they had not yet determined their best estimate of the volume of crude oil released during the incident and that the best estimate of the spill volume may well be the province of expert witnesses.  Defendants further state that they have alerted plaintiffs to a proposal for determining the amount of crude oil remaining in the relevant section of the Pegasus Pipeline, which they argue is one of several components necessary for estimating the total volume of oil released during the incident, and have invited plaintiffs to observe the process, the proposal for which has been submitted to the Pipeline and Hazardous Materials Safety Administrative ("PHMSA") for review and approval.

7

Finally, defendants state that they intend to provide plaintiffs with notices of future projects necessary to determine the total amount released.

Defendants do not seem to object to this motion to compel on any grounds other than that they have not yet computed their best estimate of the oil spilled and that certain information and documents requested are attorney work product.  The Court orders defendants to provide responsive documents relating to their current, best estimate of the spill volume that are not attorney work product; to assert privilege or attorney work product as a basis on which to withhold from production information or documents as appropriate in response to discovery requests as provided in Federal Rule of Civil Procedure 26(b)(5); and to update plaintiffs with responsive information and documents as appropriate as defendants' estimate becomes more refined.

* * *

The United States' motion to compel defendants to produce discovery responses is therefore granted in part and denied in part (Dkt. No. 38).  The United States' motion to expedite review of the United States' motion to compel (Dkt. No. 39) and the United States' motion for Order to refer United States' motion to compel to the Magistrate for expedited review (Dkt. No. 40) are denied as moot.  The State of Arkansas's motion for joinder with the United States' motion to compel and the United States' unopposed motion for leave to file reply brief are granted (Dkt. Nos. 51, 54).

SO ORDERED this 9th day of June, 2014.

_____
Kristine G. Baker
United States District Judge