**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA and STATE OF ARKANSAS, Plaintiffs,** | **Civil Action No. 4:13-cv-0355** |
| **v.** | **Judge Baker** |
| **EXXONMOBIL PIPELINE COMPANY and MOBIL PIPE LINE COMPANY, Defendants.** | **Mag. Judge Kearney** |

# CONSENT DECREE

Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Arkansas, on behalf of the Arkansas Department of Environmental Quality, filed a Complaint against Defendants, ExxonMobil Pipeline Company and Mobil Pipe Line Company, in June of 2013. The Complaint alleges that Defendants are civilly liable for violations of Sections 301(a) and 311(b)(3) of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§ 1311(a) and 1321(b)(3), and provisions of Arkansas law. The Complaint seeks federal civil penalties and injunctive relief and State civil penalties for the discharge of crude oil from a 20-inch-diameter pipeline – known as the "Pegasus Pipeline" – that ruptured in Mayflower, Arkansas on March 29, 2013. The Complaint alleges that harmful quantities of oil discharged from the pipeline to navigable waters of the United States, and that the oil spilled onto land in a residential neighborhood and into waterways, including an unnamed creek, wetlands, and Lake Conway.

Defendants represent that approximately 3,190 barrels of oil spilled from the pipeline on March 29 and 30, 2013. Defendants further represent that they have removed and repaired the section of pipe that ruptured and are committed to completing cleanup of the impacted land, waterways, and adjoining shorelines pursuant to oversight by the Arkansas Department of Environmental Quality. Defendants further represent that they are or will be performing assessment and follow-up work on the pipeline, as required under a Corrective Action Order ("CAO") originally dated April 2, 2013 and clarified May 10, 2013, issued by the United States Department of Transportation, Pipeline and Hazardous Materials Safety Administration ("PHMSA"). In the event Defendants seek permission from PHMSA to restart the pipeline in the future, Defendants further represent that, before restarting the pipeline, they will, among other things, conduct a "spike" hydrotest as part of an 8-hour "sustained-pressure" test and complete an analysis of the 2010 and 2013 in-line inspection results with a process that can help detect anomalies related to long-seam failure (e.g., "KMAP" analysis). Defendants further represent that they will comply with all aspects of PHMSA's above-referenced CAO.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid continued litigation between the Parties on the claims addressed in the Consent Decree, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before taking testimony and without adjudication or admission of any issue of fact or law, or liability, except as provided above and in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as

follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 301(a), 309(b), and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1311(a), 1319(b), 1321(b)(7)(E) and (n). This Court has supplemental jurisdiction over the State's claims pursuant to 28 U.S.C. §§ 1367(a) because the claims are related to the federal claims and form part of the same case or controversy. The Court has personal jurisdiction over the Parties to this Consent Decree.

2. Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395 because the claims arose in this district and Defendants are located and doing business in this district.

3. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and over Defendants and consent to venue in this judicial district.

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, the State, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

5. No transfer of ownership or operation of the Facility shall relieve Defendants of their obligation to ensure that the requirements of the Consent Decree are implemented.

6. In any action to enforce this Consent Decree, Defendants shall not raise as a

defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the CWA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Complaint" shall mean the complaint filed by Plaintiffs in this action.

b. "Consent Decree" or "Decree" shall mean this document.

c. "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, the rules set forth in Rule 6(a) of the Federal Rules of Civil Procedure shall be followed.

d. "Defendants" shall mean ExxonMobil Pipeline Company and Mobil Pipe Line Company.

e. "Discharge" shall mean the crude oil discharge commencing on March 29, 2013, from the Facility in Mayflower, Arkansas.

f. "Effective Date" shall have the definition provided in Section XIV.

g. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

h. "Facility" shall mean the 20-inch-diameter, interstate pipeline known as the "Pegasus Pipeline," which includes a section that runs through Mayflower, Arkansas.

i. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

j. "Parties" shall mean the United States, on behalf of EPA, the State of Arkansas, on behalf of the Arkansas Department of Environmental Quality, and Defendants ExxonMobil Pipeline Company and Mobil Pipe Line Company.

k. "Plaintiffs" shall mean the United States and the State of Arkansas.

l. "Section" shall mean a portion of this Decree identified by a Roman numeral.

m. "State" shall mean the State of Arkansas.

n. "United States" shall mean the United States of America.

## IV. CIVIL PENALTIES

8. Defendants shall not deduct or capitalize the civil penalty paid under this Section in calculating federal income tax or any state income tax.

**Penalty to be paid to the United States:**

9. Within thirty (30) Days after the Effective Date of this Consent Decree, Defendants shall pay to the United States the sum of three million one hundred ninety thousand dollars ($3,190,000.00), plus interest, as a civil penalty. Interest shall accrue from the date on which this Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the date of lodging.

10. Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided

to Defendants, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Arkansas. Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10862 and shall specify that the payment is made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

11. At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10862, to the United States in accordance with Section XIII of this Decree (Notices) and to:

Stephen C. Ewart
National Pollution Funds Center
4200 Wilson Boulevard, Suite 1000
Arlington, VA 22203-1804

Chief
United States Coast Guard
Office of Claims and Litigation CG-0945
US Coast Guard Mailstop 7213
2703 Martin Luther King Jr. Avenue, SE
Washington, DC 20593-7213

**Penalty to be paid to the State of Arkansas:**

12. Within thirty (30) Days after the Effective Date of this Consent Decree, Defendants shall pay one million dollars ($1,000,000.00) as civil penalties to the State of Arkansas for deposit into the Hazardous Substance Remedial Action Trust Fund, in accordance

with Ark. Code Ann. § 8-7-509(c)(2).

13. Payment shall be made by check or EFT in accordance with instructions to be provided to Defendants. If by check, the check shall be made payable to the Arkansas Department of Environmental Quality, referencing Action Number 7837 and mailed to:

Fiscal Division, ADEQ
5301 Northshore Drive
North Little Rock, AR 72118-5317

## V. PAYMENT OF STATE LITIGATION COSTS

14. Within thirty (30) Days after the Effective Date of this Consent Decree, Defendants shall pay to the Office of the Arkansas Attorney General the sum of two hundred eighty thousand dollars ($280,000.00) as payment in satisfaction of any State litigation fees and costs associated with this case, including but not limited to such fees and costs incurred by the Attorney General and demanded from Defendants ("Litigation Costs").

15. Defendants shall pay the Litigation Costs due by EFT to the Office of the Arkansas Attorney General in accordance with written instructions provided to Defendants. Such monies shall be deposited into the Attorney General's Consumer Education and Enforcement Fund, to be used in accordance with Act 763 of 2013. The payment shall reference the Civil Action Number assigned to this case and shall specify that the payment is made toward litigation costs to be deposited into the Consumer Education and Enforcement Fund.

16. At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for litigation costs owed pursuant to the Consent Decree in this case, and shall

reference the Civil Action Number assigned to this case to the State of Arkansas in accordance with Section XIII of this Decree (Notices).

## VI. INJUNCTIVE RELIEF

17. Defendants will henceforth treat the northern segment of the Pegasus Pipeline (Patoka, Illinois to Corsicana, Texas) as "susceptible to longitudinal seam failure," within the meaning of PHMSA regulations, for all risk assessment and operational purposes. This paragraph does not address whether Defendants were required to make such a determination prior to the Mayflower oil spill under existing regulations applicable to the Pegasus Pipeline.

18. By the end of 2015, and continuing at least every other year thereafter through 2017, Defendants will provide supplemental spill response training for all of Defendants' designated Pegasus Pipeline first responders or their replacements. This supplemental training of designated first responders will include at least one employee at or responsible for each pump station along the Pegasus Pipeline. This supplemental training will be in addition to other, regularly scheduled training under existing protocols or requirements. The supplemental training will include participation in hands-on spill response field activities and strategies. From 2016 through 2018, Defendants will submit to EPA by January 31st of each year a summary letter report documenting the supplemental spill response training described in this Paragraph for the year prior, including the number of attendees, the dates and locations of the training, and a summary of the training session.

19. By the end of 2015, Defendants will assemble and place three caches of spill response supplies and equipment at three strategic locations for their use in the event of future oil

spill response needs along the Pegasus Pipeline. The caches will be placed at the following locations: (1) Cedar Creek reservoir near Dallas, Texas, (2) Richland Chambers Reserve near Corsicana, Texas, and (3) in Mayflower, Arkansas. The equipment and supplies in the caches will be similar in quantity and type to the equipment and supplies currently maintained at other existing locations along the Pegasus Pipeline. Attachment 1 to this Consent Decree provides a list of minimum equipment and supplies that will be included in each cache. Defendants will coordinate this activity with state and local government emergency response agencies. For two years thereafter, Defendants annually will check the inventory of each cache and confirm each cache is in place and complete. From 2016 through 2018, Defendants will submit to EPA by January 31st of each year a summary letter report documenting the performance of the measures required by this Paragraph.

## VII. STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT

20. Defendants will fund a SEP or SEPs in the amount of $600,000 in accordance with the provisions in Attachment 2.

## VIII. STIPULATED PENALTIES

21. Defendants shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

22. If Defendants fail to pay the federal civil penalty and interest required under Section IV (Civil Penalties) when due, Defendants shall pay to the United States a stipulated penalty of twenty-five hundred dollars ($2,500) per Day for each Day for each payment that is late.

23. If Defendants fail to pay the State civil penalty required under Section IV when due, Defendants shall pay to the State a stipulated penalty of twenty-five hundred dollars ($2,500) per Day for each Day for each payment that is late.

24. If Defendants fail to perform the injunctive relief required under Section VI (Injunctive Relief) when due, Defendants shall pay to the United States a stipulated penalty as follows:

a. 1st to 30th day: $1,000 penalty per day;

b. 31st to 60th day: $2,500 penalty per day; and

c. More than 60 days: $5,000 penalty per day.

25. Late payment of a civil penalty and payment of any stipulated penalties shall be made in accordance with payment instructions in Section IV above. All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, for delayed performance of injunctive relief required under this Consent Decree, or for stipulated penalties for late payment of a civil penalty, as applicable.

26. For all payments of stipulated penalties to the United States, Defendants shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10862 and shall specify that the payments are for stipulated penalties to be deposited into the United States

Treasury.

27. For all payments of stipulated penalties to the State, Defendants shall reference Action Number 7837 and submit the payment as specified in Paragraph 13. All stipulated penalties paid to the State shall be deposited in the Hazardous Substance Remedial Action Trust Fund, in accordance with Ark. Code Ann. § 8-7-509(c).

28. If Defendants fail to pay State Litigation Costs required in Section V, Defendants shall pay to the State a stipulated penalty of twenty-five hundred dollars ($2,500) per Day for each Day that payment is late.

29. If Defendants fail to perform their obligations under Section VII (State Supplemental Environmental Project), stipulated penalties will accrue to the State as follows:

a. 1st to 30th day: $500 penalty per violation per day;

b. 31st to 60th day: $1,000 penalty per violation per day; and

c. More than 60 days: $2,000 penalty per violation per day.

30. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

31. Defendants shall pay any stipulated penalty within thirty (30) Days of receiving a written demand from the United States or the State, as applicable.

32. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree. The State may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties

otherwise due to the State under this Consent Decree.

33. Stipulated penalties shall continue to accrue as provided in Paragraph 30 during any Dispute Resolution under Section X, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States or the State within thirty (30) Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

b. If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

34. Defendants shall not deduct stipulated penalties paid under this Section in calculating federal income tax or any state income tax.

35. If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

36. Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.

## IX. FORCE MAJEURE

37. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

38. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA and the State within five (5) Days of when Defendants first knew that the event might cause a delay. Within ten (10) Days thereafter, Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of

any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

39. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

40. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event,

EPA will notify Defendants in writing of its decision.

41. If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) in response to EPA's determination in Paragraph 40, it shall do so no later than thirty (30) Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 37 and 38, above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

42. For purposes of performance of the SEP requirements under Section VII (State Supplemental Environmental Project), the State will be the lead agency and all references to EPA in Paragraphs 39 through 41 will be deemed to be references to the State.

## X. DISPUTE RESOLUTION

43. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

44. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States or the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States or the State shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Defendants invokes formal dispute resolution procedures as set forth below.

45. Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States or the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

46. The United States or the State shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position. The United States' or the State's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States or the State. The United States' or State's Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

47. Defendants may seek judicial review of the dispute by filing with the Court and

serving on the United States or the State, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' or State's Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

48. The United States or the State shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

49. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 45, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

50. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 33. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

51. This Consent Decree resolves the civil penalty and injunctive relief claims of the United States for the first and second causes of action alleged in the Complaint. This Consent Decree also resolves (a) the civil penalty claims of the State for the third through fifth causes of action alleged in the Complaint; (b) claims for injunctive or other relief that could have been raised by the State related to the third through fifth causes of action alleged in the Complaint; and (c) claims for Litigation Costs as defined in Paragraph 14.

52. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 51.

53. The United States and the State reserve all legal and equitable claims for, including but not limited to, injunctive relief, civil penalties, response and removal costs, expenses, damages including natural resource damages, criminal liability, and other appropriate relief, except as expressly stated in Paragraph 51. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain additional relief under any federal or state law, implementing regulations of federal or state law, or permit conditions, except as expressly specified in this Consent Decree.

54. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, response or removal costs, expenses, damages including natural resource damages, criminal liability, or other appropriate relief relating to the Facility or Defendants' violations alleged in the Complaint, including any proceeding related to any Corrective Action Order or Notices of Probable Violation issued by the

PHMSA, pertaining to the Discharge and related events, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to the claims that have been specifically resolved pursuant to Paragraph 51 of this Section. Defendants reserve any and all defenses or claims not specifically addressed in this Section.

55. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, orders, and permits. Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, orders, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, state, or local laws, regulations, orders, or permits.

56. This Consent Decree does not limit or affect the rights of Defendants or of the United States and the State against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against Defendants, except as otherwise provided by law, including but not limited to 33 U.S.C. § 1365(b)(1)(B) and 42 U.S.C. § 7604(b)(1)(B). This Consent Decree shall not be

construed to create rights in, or grant any cause of action to, any third party not a party to this Consent Decree.

57. Defendants hereby covenant not to sue and agree not to assert any claims related to the Discharge, or response activities in connection with the Discharge, against the State or the United States pursuant to the CWA, Oil Pollution Act ("OPA"), or any other state or federal law or regulation for acts or omissions through the date of lodging of the Consent Decree. Defendants further covenant not to sue and agree not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law.

## XII. COSTS

58. The Parties shall bear their own costs related to this Action and this Consent Decree, including attorneys' fees, except as provided in Section V above and except that the United States and the State shall be entitled to collect costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree.

## XIII. NOTICES

59. Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed to all parties as follows:

<u>As to the United States</u>:

To the U.S. Department of Justice:

Chief (re: DJ # 90-5-1-1-10862)
Environmental Enforcement Section
Environment and Natural Resources Division

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-0097 (facsimile)

To EPA Region 6:

OPA Enforcement Coordinator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6SF-PC
Dallas, TX 75202-2733
(214) 665-7447 (facsimile)

Edwin Quinones
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, TX 75202-2733
(214) 665-6460 (facsimile)
quinones.edwin@epa.gov

As to State of Arkansas:

Jamie Leigh Ewing
Assistant Attorney General
CURAD/Environmental Division
Arkansas Attorney General's Office
323 Center Street, Suite 400
Little Rock, AR 72201
(501) 682-5310 (telephone)
(501) 682-3895 (facsimile)
jamie.ewing@arkansasag.gov

Tammie Hynum
Chief, Hazardous Waste Division
5301 Northshore Drive
North Little Rock, AR 72118
(501) 682-0831 (telephone)
Hynum@adeq.state.ar.us

As to Defendants:

Karen S. Tyrone, or Successor
Vice President, Operations
ExxonMobil Pipeline Company
22777 Springwoods Village Parkway
Spring, TX 77389
(832) 624-7918 (telephone)
karen.s.tyrone@exxonmobil.com

Troy A. Cotton, or Successor
General Counsel
ExxonMobil Pipeline Company
22777 Springwoods Village Parkway
Spring, TX 77389
(832) 624-7922 (telephone)
troy.a.cotton@exxonmobil.com

60. Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

61. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

62. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION/TERMINATION

63. The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XVI. TERMINATION

64. After Defendants have complied with the requirements of this Consent Decree, including those relating to the SEP required by Section VII, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and the State a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

65. Following receipt by the United States and the State of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit a joint stipulation terminating the Decree that shall automatically terminate this Consent Decree as of the date the joint stipulation is filed. If the United States after consultation with the State does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until thirty (30) days after service of its Request for Termination.

## XVII. PUBLIC PARTICIPATION

66. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment. The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree is subject to notice of lodging of the Consent Decree and a public comment period. The United States reserves the right to

withdraw or withhold consent if the comments disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

67. Defendants and the State agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Parties in writing that it no longer supports entry of the Decree. Defendants and the State consent to entry of this Consent Decree without further notice except through the Court's electronic case filing system.

## XVIII. SIGNATORIES/SERVICE

68. The Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, on behalf of the United States, and the undersigned representatives of the State and Defendants each certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

69. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

## XIX. INTEGRATION

70. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor

shall it be used in construing the terms of this Decree.

## XX. FINAL JUDGMENT

71. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants.

**This Consent Decree is dated and entered this 12th day of August, 2015.**

Kristine G. Baker
**UNITED STATES DISTRICT JUDGE**
**Eastern District of Arkansas**

**Signature Page to Consent Decree in *U.S. et al. v. ExxonMobil Pipeline Co. et al.***

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Dated: 4/14/15

JOHN C. CRUDEN
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

Dated: April 14, 2015

JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
ROBYN E. HANSON
Trial Attorney (N.Y. Bar No. 4462339)
EMILY C. POWERS
Trial Attorney (N.Y. Bar No. 5132204)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

CHRISTOPHER R. THYER
United States Attorney
Eastern District of Arkansas

RICHARD M. PENCE, JR.
Assistant United States Attorney (Ark. Bar #69059)
United States Attorney's Office
Eastern District of Arkansas
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600 (telephone)
richard.pence@usdoj.gov

**Signature Page to Consent Decree in *U.S. et al. v. ExxonMobil Pipeline Co. et al.***

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

Dated: 4/16/2015

RON CURRY
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

Dated: April 1, 2015

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

**Signature Page to Consent Decree in *U.S. et al. v. ExxonMobil Pipeline Co. et al.***

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

Dated: 4/15/15

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

Dated: 4/10/15

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

Dated: 4-9-15

MARK POLLINS
Director
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

Dated: 4-9-15

KELLY BRANTNER
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

**Signature Page to Consent Decree in *U.S. et al. v. ExxonMobil Pipeline Co. et al.***

**FOR PLAINTIFF STATE OF ARKANSAS:**

LESLIE RUTLEDGE
Arkansas Attorney General

Dated: 4/20/15

JAMIE LEIGH EWING, Ark. Bar No. 2004141
Assistant Attorney General
CURAD/Environmental Division
Arkansas Attorney General's Office
323 Center Street, Suite 400
Little Rock, AR 72201
(501) 682-5310 (telephone)
(501) 682-3895 (facsimile)
jamie.ewing@arkansasag.gov

**Page to Consent Decree in *U.S. et al. v. ExxonMobil Pipeline Co. et al.***

**FOR DEFENDANTS:**

**EXXONMOBIL PIPELINE COMPANY**

Dated: April 13, 2015 By: [signature]

**MOBIL PIPE LINE COMPANY**

Dated: April 13, 2015 By: [signature]

**Consent Decree Attachment 1**
**List of Minimum Equipment to be Included in Caches Pursuant to Paragraph 19**

2,000-3,000 feet of 10" skirted river boom

80 feet of 4" absorbent boom

1 roll of ½" x 300 feet solid braid rope

TOPO drawing with pipeline

4 flash lights

2 shovels

First aid kit

Box of 50 Nitrile disposable gloves – size large

Box of 50 Nitrile disposable gloves – size extra large

4 safety glasses

1 box (20-25) Tyvek suits – size extra large

4 x 100-count absorbent pads

2 boxes of trash bags

# ATTACHMENT 2

## SEP ADDENDUM

1. This Addendum governs the process for proposing, selecting, and performing the Supplemental Environmental Projects ("SEPs) required by Paragraph 19 of the Consent Decree.

2. All SEPs are subject to the following criteria:

   a. All SEPs shall directly or indirectly benefit Lake Conway, located in Faulkner County, Arkansas and/or its watershed, with a preference for projects designed to improve the water quality of Lake Conway and/or its watershed.

   b. All SEPs shall prevent pollution, reduce or mitigate the amount of pollutants reaching the environment, enhance the quality of the environment, or contribute to public awareness of environmental matters.

   c. The cumulate total cost of all SEPs to Defendants shall not exceed the amount of money required by Paragraph 19 of the Consent Decree ($600,000.00).

   d. All SEP(s) shall be completed within three (3) years from approval of the SEP Plan pursuant to Paragraph 3 of this Addendum.

   e. All SEPs shall fund new or existing projects or programs sponsored by qualified established third parties to the extent that such projects or programs meet the criteria in this Paragraph.

   f. No SEP that is otherwise required by any federal, state, or local law or regulation or by any other agreement, grant, or injunctive relief shall be considered.

3. All SEPs shall be proposed and approved as follows:

   a. SEP Project Proposal(s) shall be submitted to the State within one hundred twenty (120) Days after the Effective Date of the Consent Decree.

   b. Each Project Proposal shall describe the proposed SEP; identify the proposed third party recipient of SEP funding; describe the qualifications of recipient to perform the SEP; identify how the SEP meets the criteria of Paragraph 2 of this Addendum; set forth a proposed implementation schedule, including anticipated performance and funding milestones; and include a proposed fixed budget and payment schedule.

   c. Within thirty (30) days of receipt of the Project Proposal(s), the State shall review the Project Proposal(s) and preliminarily approve or disapprove of the Project Proposal(s).

d. Within one hundred and twenty (120) Days after the preliminary approval of the Project Proposal(s), Defendants shall propose a SEP Plan to the State incorporating the preliminarily approved Project Proposal(s).

e. The proposed SEP Plan shall include a detailed description of each SEP; a fixed budget for each SEP; a payment schedule for each SEP; milestones for each SEP, the identities and qualifications of each third party partner; and a description of how each SEP meets the criteria of Paragraph 2 of this Addendum. The SEP Plan must also include a provision concerning periodic reporting, but in no event shall period reporting be more frequent than quarterly.

f. Within thirty (30) Days of receipt of the proposed SEP Plan, the State shall approve the SEP Plan or provide comments to Defendants on the SEP Plan.

g. Within thirty (30) Days of receipt of the State's comments, if any, Defendants shall revise the SEP Plan in accordance with the comments and resubmit the SEP Plan to the State.

h. Within thirty (30) Days of receipt of the revised SEP Plan, if any, the State shall finalize and approve the SEP plan, subject to Defendants' rights pursuant to Section X of the Consent Decree (Dispute Resolution).

4. Defendants shall have no obligation to guarantee or ensure the performance of the SEP(s) by any approved third party partner. Once the SEP Plan is approved, Defendants' sole obligations shall be to fund the SEP(s) in accordance with the SEP Plan and to comply with the SEP reporting requirements in Paragraph 5 of this Addendum. The SEP Plan shall be deemed complete once the total funding for the SEP(s) has reached the amount specified in Paragraph 19 of the Consent Decree ($600,000.00), regardless of the status of the work being performed by the approved third party partner(s).

5. Defendants shall comply with the following SEP reporting requirements:

a. Periodic Reports. Defendants shall submit any periodic reports required by the approved SEP Plan.

b. SEP Completion Report. Within sixty (60) Days of completion of all SEPs required by the approved SEP Plan, Defendants shall submit a SEP Completion Report to the State. The report shall contain the following information:

i. A detailed description of the SEP(s), as implemented, including how the SEP(s) met the criteria in Paragraph 2 of this Addendum;

ii. A description of any operating problems encountered and the solutions thereto;

iii. Itemized costs; and

iv. A certification that the approved SEP Plan was fully implemented.

c. The SEP Completion Report shall clearly identify and include acceptable documentation for all eligible SEP costs. Where the SEP Completion Report includes costs not eligible for SEP credit, those costs must be clearly identified as such. For purposes of this paragraph, "acceptable documentation" includes invoices, purchase orders, or other documentation that specifically identifies and itemizes the individual costs of the goods and/or services for which payment is being made. Cancelled drafts do not constitute acceptable documentation unless such drafts specifically identify and itemize the individual costs of the goods and/or services for which payment is being made.

6. Within thirty (30) Days of receipt of the SEP Completion Report, the State shall notify Defendants in writing:

   a. Of any deficiencies in the SEP Completion Report itself along with a grant of an additional thirty (30) Days to correct any deficiencies; or

   b. That the State concludes that the SEP Plan has been completed satisfactorily; or

   c. That the State concludes that the SEP Plan has not been completed satisfactorily and that the State may seek stipulated penalties in accordance with Section VIII (Stipulated Penalties) of the Consent Decree, subject to Defendants' rights pursuant to Section X of the Consent Decree (Dispute Resolution).

7. The approved SEP Plan may only be modified by agreement of the State and Defendants in writing.

8. The State and Defendants shall exchange all notices, comments, and reports required by this Addendum as provided in Section XIII (Notices) of the Consent Decree.

9. Any prepared public statement, oral or written in print, film, or other media, made by Defendants or SEP funding recipients shall include the following language, "This project was undertaken in connection with the settlement between the State of Arkansas, the United States, ExxonMobil Pipeline Company, and Mobil Pipe Line Company."

10. This Addendum is incorporated into and is fully enforceable under the Consent Decree.